BERKELEY SULPHUR SPRINGS, a corporation, complainant,

*v.*

SEBASTIEN LIBERTY et al., defendants.

[Decided September 15th, 1932.]

*Messrs. Avidan & Avidan,* for the complainant.

*Mr. Harvey Rothberg,* for the defendants.

BACKES, V. C.

The complainant owned an eighteen-acre tract of land, subdivided into building lots. The defendant Liberty owned a quarter interest in the company and was the local agent for the sale of lots. He contracted to sell six contiguous lots to one Krantz for $2,500; $250 down payment, $750 upon delivery of deed, and $1,500 in one year, secured by mortgage. The contract was made April 25th, 1931, to be performed by June 1st, then next. It is in the nature of a receipt, signed by Liberty, for the $250 down payment, states the particulars of sale, and concludes that "all this is subject to approval of owner;" the latter, because Liberty held himself out to Krantz as the agent of the complainant. Liberty then represented to the complainant's president that he had a customer at $2,500 for ten contiguous lots—the six Krantz

lots and four involved in this suit. He suppressed the Krantz contract. The price was satisfactory to the complainant's president but the terms were not, and he wrote Liberty that the complainant would sell to Liberty's customer the ten lots (he called it an acre) upon a $1,000 cash payment, $300 in three months and $1,200 in six months. Liberty was to get five per cent. commission. That was April 30th—five days after the Krantz contract. Liberty then started finessing. This resulted in the complainant, on May 16th, giving to Liberty's attorney, Rothberg, an option to buy the ten lots for $2,325 cash on or before July 1st. The price was net; Liberty was to get no commission. Rothberg, his attorney, was supposed to be financing the cash transactions for him and Liberty's compensation was to be found in the difference between the cash price and the customer's offer. The lots were to be conveyed to Rothberg's appointees. Liberty then arranged with Krantz to take $2,375 cash, or maybe it was before the option; as to that the evidence is not clear. This left due Liberty from Krantz $2,125 ($250 had been paid down) and $2,125 was due on the option agreement ($200 having been paid on the option). On the closing day, May 21st, five days after the option, the company conveyed six lots to Mrs. Krantz and four to the Plainfield Land and Building Company. Krantz' money was used to pay the complainant. The Krantz contract was all the while concealed. The Plainfield Land and Building Company conveyed the four lots to the Ideal Home and Land Company. The first was Rothberg's company, the other belongs to Liberty. Both were "dummies" for Liberty. The evidence leaves no doubt as to the agency and the making of a secret profit through fraudulent concealment. It is written throughout the testimony. Liberty's stationery bears witness to the agency, and he, in fact, protested it in a letter written to the president of the complainant shortly after the transaction, June 4th, 1931, when Krantz was negotiating for more lots. "I want to reiterate here that you had better give me a workable price for the sale of the property in the

rear for which I already made you the offer for Mr. Krantz for $500 per acre. He wants to buy six acres. Should there be any sales or dealings made with him on that property, I shall expect my commission for he is my customer."

The law is well settled that a broker owes absolute loyalty to his principal. Employed to sell property, he is in duty bound to disclose the best price obtainable; he cannot make a secret profit; if he secretly becomes the buyer, the conveyance is voidable at the option of the principal, and if he deals with the principal as purchaser, the burden is upon him to establish the fairness of the transaction and impeccable conduct on his part. *Gordon* v. *Kaplan, 99 N. J. Eq. 390; 132 Atl. Rep. 110; Porter* v. *Woodruff, 36 N. J. Eq. 174; 9 Corp. Jur. 536.*

Rothberg received $300 for his part in the transaction; $50 in cash and a note for $250. That the $300 was consideration for the conveyance of the four lots from his company to Liberty's company, as he and Liberty testified, is pretense. Liberty says he paid Rothberg the $50 in cash, but Rothberg testifies that he got the $50 from Krantz, in the difference between Krantz' price of $2,375 and the complainant's net price of $2,125, which is palpably untrue, for as we have seen, there was no difference of $50 coming from Krantz at the settlement.

The fraud will be undone; the lots will have to be given back. A decree will be advised cancelling the deeds.